KENT SPENCE, Pro Se
CRISTINA SPENCE, Pro Se
11727 Lake Lucaya Dr.
Riverview, FL 33579
Phone: (813) 595-1588

## UNITED STATES DISTRICT COURT
## FOR THE
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

KENT SPENCE and

CRISTINA SPENCE,

          Plaintiffs, v.

          Case No.: *8:25-CV-2863-KKM-CPT*

GEMINI TRUST COMPANY, LLC,

          Jury Trial Demanded

          Defendant

## COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF

## I. INTRODUCTION AND PARTIES

1. Plaintiffs, KENT SPENCE and CRISTINA SPENCE, proceeding Pro Se, allege the following against Defendant GEMINI TRUST COMPANY, LLC.

2. This is an action seeking compensatory and punitive damages from Defendant Gemini Trust Company, LLC (Gemini) for its willful conversion, breach of statutory fiduciary duty, and gross negligence regarding the refusal to return 209,124 USDC, which are legally recognized digital assets belonging solely to Plaintiffs.



3. Plaintiffs are KENT SPENCE and CRISTINA SPENCE, individuals residing in Hillsborough County, Florida.

4. Defendant is GEMINI TRUST COMPANY, LLC ("Gemini"), a limited liability company organized under the laws of the State of New York. For purposes of diversity jurisdiction under 28 U.S.C. § 1332, an LLC possesses the citizenship of all its members. Based on a reasonable inquiry of publicly available information, Gemini is a wholly owned subsidiary of Gemini Spaceship, LLC, which is controlled by its ultimate parent, Gemini Space Station, Inc., a corporation with citizenship in Nevada (incorporation) and New York (principal place of business). Upon information and belief, and after a reasonable inquiry into the ownership structure of Gemini, and thus all its underlying members,  none of its members, nor the members of any underlying entities, are citizens of the State of Florida.

## II. JURISDICTION AND VENUE

5. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 (Diversity of Citizenship) because the matter in controversy exceeds the sum or value of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs, and there is complete diversity of citizenship between the Plaintiffs and the Defendant. As alleged in paragraph's 3 and 4, Plaintiffs are citizens of the State of Florida, and Defendant GEMINI TRUST COMPANY, LLC is not a citizen of Florida.

6. Plaintiffs KENT SPENCE and CRISTINA SPENCE are citizens of the State of Florida.

7. For the purpose of establishing diversity jurisdiction under 28 U.S.C. § 1332, a Limited Liability Company (LLC) possesses the citizenship of all its members (see Carden v. Arkoma Assocs., 494 U.S. 185, 195 (1990)). Upon information and belief, and following reasonable inquiry, no member of Defendant GEMINI TRUST COMPANY, LLC is a citizen of the State of Florida. Thus, complete diversity of citizenship exists between the Plaintiffs and the Defendant.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to the claim occurred in this District. The Plaintiffs reside in this District and maintained their account and suffered financial injury in this District.

## III. FACTS RELATED TO CONVERSION AND WILLFUL MISCONDUCT

9. On or about April 8, 2022, Plaintiffs attempted to transfer 209,124 USDC (USD Coin), a stablecoin pegged to the United States Dollar, to their Gemini receiving address (0x8Ecc31329f73b52633b202BCa6337e72996DAc57).

10. This specific destination address was a valid, pre-existing, and previously utilized address associated with their Gemini account.

3

11. This address had been formally whitelisted by the sending exchange (Crypto.com) prior to initiation of the transaction, establishing a reasonable expectation that the transfer would succeed.

12. The 209,124 USDC at issue is a 'Controllable Electronic Record' (CER) as defined in Florida Statute § 669.102(1)(b), and as such, is a legally recognized form of commercial property subject to the remedy of conversion under Florida law.

13. Plaintiffs' claims for Conversion and Breach of Statutory Fiduciary Duty are grounded in the common law of tort and non-waivable statutory duties, respectively, and therefore do not arise under or require interpretation of the Gemini User Agreement.

14. The asset sent by Plaintiff to the Defendant's Ethereum-compatible deposit address remains in a custodial account to which only the Defendant possesses the private cryptographic key. The funds are not "lost" or unrecoverable, as they are currently recorded on an EVM-compatible layer-2 blockchain that utilizes the identical address structure as Ethereum Mainnet.

15. Following the transaction, Plaintiffs promptly realized the funds had not arrived and immediately commenced communications with both exchanges.

16. Upon contacting Defendant Gemini, Plaintiffs were initially assured via a help ticket that Gemini was actively "working on it" and that "nothing further needed to be done." However, Gemini later introduced a contradictory stance, stating they currently lacked the capability to recover the funds, but without ever denying the Plaintiffs' ownership or right to the assets. This constituted a denial of technical assistance, not a denial of custody.

17. Confronted with this denial, Plaintiffs then contacted Crypto.com, and the representative formally confirmed the funds were "on the wallet that is in the custody of Gemini," and that "only Gemini might recover the funds at this point."

18. Gemini's technical control and Feasibility. The funds are demonstrably under the Defendant's technical control because the destination address (0x8Ecc3...) is an Ethereum Virtual Machine (EVM)-standard address.

19. Because the Cronos Network is EVM-Compatible, the single Private Key that Gemini uses to control the funds at this address on the Ethereum Network is the identical Private Key required to access the funds at the same address on the Cronos Network.

20. This immutable, verifiable fact proves that the Defendant created and maintains sole technical and custodial control over the specific address holding the Plaintiffs' property.

21. On-chain data from the Ethereum Network confirms that the destination address (0x8Ecc3...) is a Contract Address, and the CONTRACT CREATOR is explicitly listed as "Gemini 3 yrs 275 days ago." Furthermore, the Plaintiffs, in a good-faith attempt to remove all possible technical barriers, proactively provided the necessary native gas token (CRO) to the destination address (0x8Ecc3...) on the Cronos network on Dec. 6th 2022. This action eliminated the only remaining potential technical cost—the gas fee required to execute the transaction off the Cronos network—confirming that the funds are fully prepared for repatriation. Gemini's continued retention of the property is therefore not a matter of technical incapacity or cost, but a deliberate, conscious choice.

22. Gemini's Institutional Competence: The Defendant's own public statements and recent product rollouts demonstrate that the recovery of misdirected assets on EVM-compatible networks is a standard, technically feasible operation. As of August 13, 2025, Gemini publicly announced support for deposits and withdrawals of ETH and USDC on multiple Layer 2 blockchains, including Optimism and Arbitrum. The stated purpose of this multi-chain support includes "minimiz[ing] risk of token recovery

issues caused by unsupported deposits", proving the Defendant already possesses the technical solution to the exact problem that caused Plaintiffs' loss.

23. Further Proof of USDC Multi-Chain Control: The Defendant has further expanded its capabilities to include transfers of the stablecoin at issue, USDC, on other chains like Solana and Base. The Cronos Network, where Plaintiffs' assets are held, is an EVM-compatible network, making the recovery of the USDC technically identical to the recovery process the Defendant has publicly stated they now manage for their New York customers and others on multiple other chains. Their continued refusal is a willful policy choice of neglect, not a statement of technical inability.

24. Regulatory Sanction for Due Diligence Failure: The Defendant's conduct in this matter is consistent with a pattern of failing to meet its fiduciary obligations as a New York-chartered Trust Company. On February 28, 2024, the New York Department of Financial Services (NYDFS) fined Gemini $37 million for "significant failures that threatened the safety and soundness of the company" and for its failure to conduct sufficient due diligence on third-party partners.

25. Gemini's refusal to utilize the sole, identical private key associated with the destination address (0x8Ecc3...) to access and repatriate the funds

constitutes unauthorized and continuous dominion over Plaintiffs' property to the complete exclusion of their rights, thereby establishing the tort of conversion. This retention is not a simple mistake or technical failure but a willful, multi-year course of conduct intended to obstruct the resolution of this claim through deceptive delay, bad faith refusal, and administrative obstruction.

26. Gemini's defense that the funds are 'unrecoverable' due to user error is directly refuted by its own formal regulatory disclosures to the U.S. Securities and Exchange Commission (SEC). In the 'Risk Factors' section of its S-1 Registration Statement, Gemini formally acknowledged the exact systemic risk now being denied, noting that security or coding flaws in its 'Custody services' could result in the 'loss or theft of digital assets'. Specifically, the S-1 warns of scenarios that explicitly include: 'a user receiving an incorrect blockchain address, or us sending digital assets to the wrong blockchain address'. This documented admission confirms that Gemini had prior knowledge of the risk inherent in misdirected or cross-chain transfers, understood its fiduciary and technical duty to mitigate or resolve it, and is now attempting to shift a known, corporate operational risk onto the individual customer in bad faith. This conduct is evidence of willful misconduct.

27. This assertion is refuted by the demonstrable industry standard of care and technical reality. Peer-regulated custodians, such as Coinbase, routinely offer misdirected asset recovery services for EVM-compatible networks, charging a standard recovery fee of 5% of the recovered asset value. Furthermore, the technical cost of moving the asset across these networks is demonstrably negligible, with commercial bridge services charging as little as 0.01% of the transaction value. Gemini's refusal to perform this standard custodial function, which is technically feasible, commercially routine, and required by their fiduciary status, constitutes an act of intentional conversion of the Plaintiffs' property.

28. This conduct included a continuous effort to induce reliance and deter legal action, such as:

A. Explicit assurances of imminent recovery and deterrence of action, including a representative stating on April 11, 2022: "We are definitely here to assist and will be sure to reach out once we are able to retrieve your funds. There is no further action required from your end at this time." This induced Plaintiffs to abandon their own recovery efforts.

B. Willful Administrative Obstruction (Boilerplate Denial), when on July 19, 2024, Gemini deliberately resent the boilerplate "Unsolicited Transfer" sections of the User Agreement despite the

Plaintiffs' explicit request not to.

C. Explicit Denial of Private Key Access, when on January 16, 2025, Plaintiffs asked Gemini to provide the private key for the deposit address to allow for self-recovery. Gemini denied this request, confirming their exclusive technical control over the asset.

D. Escalation to Legal and Administrative Obstruction, starting on March 10, 2025, with the Defendant's external attorney, Jack Baughman, explicitly advising Plaintiffs to suppress regulatory involvement, stating in writing: "There is no need to cc the SEC on this matter."

E. Administrative Retaliation by Ticket Closure SEC, when on March 17, 2025, Plaintiffs formally notified Gemini of the SEC escalation, to which Gemini responded by immediately closing the ticket and sending a "How did we do?" survey.

F. Administrative Stonewalling and Delay, when the legal team used June 30, 2025, to August 20, 2025, to delay the settlement offer resolution by forcing document re-uploads via a secure link and then falsely claiming the documents were "unable to locate."

G. Definitive Refusal and Admission Against Interest, when Gemini issued a administrative denial on August 26, 2025, which explicitly acknowledged that "some other platforms may offer recovery options in similar circumstances," but refused to perform the recovery work,

cementing the willful nature of the retention.

H. Administrative Retaliation by Ticket Closure, when Plaintiffs sent the PRE-LITIGATION NOTICE AND DEMAND on October 7, 2025, to which Gemini's response on October 8, 2025, was to close the ticket and send a "How did we do?" survey.

I. Denial and Falsification of Facts, when Counsel Jack Baughman's official response on October 9, 2025, was a falsification of facts, asserting: "Gemini does not have and never has had 'control' of the assets to which you refer."

J. Willful Obstruction of Federal Access to Justice (Threat of Fees), when on October 13, 2025, after receiving the draft Federal Complaint, Gemini counsel threatened to seek attorneys' fees if the Plaintiffs pursued their claims in court.

K. Willful Obstruction of Legal and Regulatory Redress: The legal department's actions—including the response from Gemini that required the Plaintiffs to "You will need to have your legal representative contact our counsel," counsel J. Baughman explicitly advising the customer that it was "not necessary to cc the SEC on this matter" (Paragraph 28.D), issuing a threat to seek attorneys' fees against the pro se Plaintiffs (Paragraph 28.J), and the documented warning to the customer to "reconsider your course of action,"— constitute a coordinated act of bad faith intended to discourage the

11

Plaintiffs from seeking regulatory and legal redress.

L.  Refusal to Negotiate and Seven-Month Calculated Silence: Following a direct communication from counsel in March 2025, Gemini's legal department deliberately ceased all communication until October 2025, constituting a seven-month period of calculated legal silence intended to frustrate and extinguish the claim by delay. This conduct included ignoring the Plaintiffs' good-faith, formal written settlement offer of $185,000 on a principal claim of $209,124, and subsequently issuing a final denial (from general support not legal) on October 15, 2025, that completely failed to address the outstanding settlement proposal, demonstrating a deliberate refusal to engage in resolution and forcing unnecessary litigation.

M.  Final Willful Obstruction of Access to Justice (Refusal to Cure Unconscionability): On October 15, 2025, Plaintiffs formally demanded that Gemini cure the unconscionability of the mandatory New York arbitration clause by offering two specific, reasonable alternatives: (1) full payment of all fees and logistical costs for New York arbitration (Solution A); or (2) re-venuing the arbitration to the Middle District of Florida and paying all core fees (Solution B). Gemini failed to accept either solution by the deadline of October 20, 2025. This refusal constitutes conclusive evidence of Gemini's bad faith intent to deny Plaintiffs access to any legal remedy.

N. Denial of Administrative Reversal (March 2024): In a continued demonstration of the willful refusal to repatriate the assets, Plaintiffs formally asked Defendant on March 17, 2024, if it could implement a standard administrative function to "reject this transaction deposit so that it would return to the sender." Defendant refused this request, confirming its conscious choice to retain the funds despite a simple pathway back to the originating exchange.

O. Explicit Admission of Case Handling Failure (May 2024): As conclusive proof of Gross Negligence and a breakdown of internal controls, on May 22, 2024—over two years into the case—a Gemini support representative (Ticket ID: 4914653) explicitly stated: "We were unable to locate your transaction at this time" and requested Plaintiffs re-state basic details (like the network used) that were already documented and central to the case history. This systemic failure to maintain records for a high-value customer asset directly supports the claim that Defendant's conduct rises to the level of Gross Negligence.

29. At all times since the transfer, Gemini has acknowledged that the $209,124.00 USDC stablecoins remain the sole property of the Plaintiffs. In an Oct. 15th, 2025, email, Gemini stated: "While we acknowledge that the underlying tokens remain the customer's property, their inaccessibility

is not due to a claim of ownership by Gemini..." This admission confirms the retention is a matter of willful technical obstruction, not a denial of legal ownership.

30. Gemini's Multi-Chain Expansion Confirms Feasibility. As further evidence of the Defendant's technical capability and willful bad faith, the Defendant has publicly announced the successful engineering and deployment of deposit and withdrawal support on several EVM-compatible layer-2 networks since the date of Plaintiff's loss, including Arbitrum, Optimism, and Base. This deployment proves the Defendant's technical systems can access and manage funds across these chains using the same cryptographic infrastructure that holds the Plaintiffs' mis-sent assets.

31. The stated purpose of this multi-chain technical expansion was, in the Defendant's own words (published on their corporate blog), to achieve "Minimized token recovery issues caused by unsupported deposits."

32. This technical admission confirms that the Defendant is aware of the exact problem and has engineered the solution to prevent it for new users, yet their explicit refusal to apply this existing technical solution to the Plaintiffs' pre-existing converted property is a deliberate choice to retain the funds.

33. Plaintiffs, proceeding Pro Se, are financially disabled , with their retirement security jeopardized by the retention of funds. Plaintiff Kent Spence relies on Social Security income and Medicare for healthcare. Plaintiff Cristina Spence is unable to work due to medically diagnosed severe depression and anxiety and relies on a low-income subsidized Affordable Care Act (ACA) plan for healthcare. As evidenced by their IRS 1040s, the Plaintiffs' combined adjusted gross income (AGI) for the past three consecutive years was $25,876 (2022), $16,254 (2023), and $21,908 (2024). The costs associated with mandatory, non-local arbitration, including travel to New York and the payment of substantial administrative fees under the AAA Commercial Rules, are prohibitively expensive for the Plaintiffs. Based on the total amount in controversy (Compensatory Damages + $2,000,000 in Punitive Damages, totaling $2,209,124.00), the up-front, non-refundable filing and administrative fees to the AAA alone exceed $11,450.00. Requiring Plaintiffs, who are on a fixed and limited income, to bear total costs estimated to be in excess of $35,000 (including arbitrator deposit and non-local travel) constitutes an unreasonable and prohibitive barrier to resolving their claims. Gemini's subsequent refusal of the Plaintiffs' formal demand to pay the costs or transfer the venue (Paragraph 28.M) confirms the company's willful intent to weaponize the cost barrier to obstruct justice.

34. The retention of these retirement funds has caused the resulting forced paralysis in their long-term financial planning (Mr. Spence age 67) and aggravated and worsened Plaintiff Cristina Spence's pre-existing, medically documented severe depression and anxiety.

## IV. LEGAL CLAIMS

## COUNT I: CONVERSION

35. The 209,124 USDC, by its status as a fully backed and redeemable digital asset, constitutes "property" subject to conversion under Florida law.

36. Plaintiffs, by their undisputed ownership, maintain a superior right to the immediate possession of the 209,124 USDC.

37. Gemini has exclusive custody and control over the funds, establishing the Defendant's technical possession of the property.

38. Gemini has exercised wrongful dominion and interference over the Plaintiffs' property by unilaterally and without authorization linking the assets to a new Cronos address, and by willfully refusing to execute the simple and known recovery function for over three years, despite the technical feasibility being proven by its own subsequent multi-chain expansion (Paragraphs 22-23) and the availability of the recovery as a standard industry service (Paragraph 27).

39. As a direct and proximate result of Gemini's conversion, Plaintiffs have suffered the loss of their principal, lost opportunity, and severe financial and emotional distress.

## COUNT II: BREACH OF STATUTORY FIDUCIARY DUTY

40. Plaintiffs incorporate by reference and re-allege Paragraphs 1 through 39 as though fully set forth herein.

41. The Defendant's failure to recover the Plaintiffs' assets, on the spurious basis of a "technical impossibility," is a continuation of a documented, systemic failure of its fiduciary duty. The Defendant has been formally sanctioned by its regulator, the NYDFS, and paid a $37 million fine for "significant failures that threatened the safety and soundness of the company," specifically due to a failure of due diligence and oversight (Paragraph 24). This sanction is further evidence that Defendant has failed to meet the enhanced safety and soundness requirements imposed by the New York Banking Law in relation to its customers.

42. Pursuant to its status as a New York State-chartered Trust Company, Defendant Gemini is held to a statutory fiduciary duty that extends beyond the contractual limitations of its User Agreement. This non-waivable duty, mandated by NYDFS guidance, requires Gemini to preserve and protect the customer's equitable and beneficial interest in custodied virtual

currency, and specifically prohibits Gemini from establishing a debtor-creditor relationship with respect to those assets. The undisputed arrival of 209,124 USDC to an address technically controlled by Gemini on the Cronos network triggered this heightened duty. Gemini breached this duty by:

    A. failing to maintain the necessary technical infrastructure to retrieve an easily accessible asset despite acknowledging the risk in its SEC S-1 filings; and

    B. willfully refusing to utilize its sole private key to repatriate the asset. This failure to act constitutes a material breach of the non-ministerial duty of care imposed by New York Banking Law § 100, and is an action taken with respect to property under the exclusive dominion of a regulated custodian.

43. The New York regulatory framework, and subsequent NYDFS guidance, mandates a heightened duty of care on custodians like Gemini to maintain asset segregation and preserve the customer's equitable and beneficial interest in the virtual currency, requiring the custodian to use its sole control to repatriate the property when technically feasible.

44. Gemini breached this specific statutory duty by:

    A. failing to resolve a known, foreseeable systemic risk;

    B. engaging in a multi-year course of willful misconduct and obstruction; and

    C. failing to exercise its sole technical capability to recover and repatriate the converted assets, a recovery function which is now a standard, automated service offered by regulated peer institutions.

45. This statutory duty is independent of, and non-waivable by, the User Agreement.

46. As a direct and proximate result of Gemini's breach of fiduciary duty, Plaintiffs have suffered damages.

## COUNT III: WILLFUL MISCONDUCT / GROSS NEGLIGENCE (PUNITIVE DAMAGES)

47. Plaintiffs incorporate by reference and re-allege Paragraphs 1 through 46 as though fully set forth herein.

48. This misconduct is further evidenced by Defendant's prior regulatory sanctions, including the $37 million NYDFS fine for systemic due diligence failures, which confirms a pattern of disregard for the safety and soundness

of customer assets (Paragraph 24).

49. Gemini's pattern of deceptive delay, administrative retaliation, obstruction of regulatory and legal processes, refusal to acknowledge a settlement offer, and the seven-month period of legal silence, as described in Paragraph 28, rises to the level of Willful Misconduct or Gross Negligence.

50. This conduct demonstrates a wanton and deliberate disregard for the Plaintiffs' rights and is sufficient to support an award of Punitive and Exemplary Damages.

## COUNT IV: NEGLIGENCE

51. Plaintiffs incorporate by reference and re-allege Paragraphs 1 through 50 as though fully set forth herein.

52. Gemini owed Plaintiffs a duty of reasonable care as a regulated custodian in the safe handling and, critically, the timely remediation of known, foreseeable technical risks acknowledged in their regulatory filings.

53. Gemini breached this duty by failing to exercise reasonable care in the management and technical capability to recover funds that are demonstrably within its sole technical control.

54. As a direct and proximate result of Gemini's negligence, Plaintiffs have suffered damages.

## COUNT V: DECLARATORY JUDGMENT (OWNERSHIP/ CONSTRUCTIVE TRUST)

55. Plaintiffs incorporate by reference and re-allege Paragraphs 1 through 54 as though fully set forth herein.

56. Plaintiffs seek a declaration that the specific digital assets transferred (209,124 USDC), which Defendant has repeatedly acknowledged remains the sole property of the Plaintiffs, must be returned immediately upon technical recovery.

57. Plaintiffs seek a declaration that if Defendant or any affiliated entity later recovers or gains control of said assets, Defendant shall be deemed to hold those assets in a Constructive Trust for the sole benefit of the Plaintiffs, mandating the immediate repatriation of the full 209,124 USDC to the Plaintiffs' active Gemini account upon recovery.

## COUNT VI: DECLARATORY JUDGMENT (ARBITRATION)

58. Pursuant incorporate by reference and re-allege Paragraphs 1 through 57 as though fully set forth herein.

59. Plaintiffs anticipate the Defendant will file a Motion to Compel Arbitration based on the User Agreement.

60. Plaintiffs seek a Declaratory Judgment that the arbitration clause is an

unconscionable agreement, unenforceable because:

   A.  Gemini waived its right to arbitrate through a multi-year course of willful misconduct and delay;

   B.  the claims are based on independent, post-contractual common law torts that do not rely on the User Agreement; and

   C.  Defendant has formally refused to cure the prohibitive financial and logistical barriers, thereby denying Plaintiffs access to any effective legal remedy.

61. Plaintiffs assert the arbitration clause is an unconscionable agreement, which, under Florida law, requires a showing of both procedural and substantive unconscionability; however, courts must apply a "sliding scale" where the two elements are evaluated interdependently, and a high degree of one element can compensate for a lower degree of the other. See Basulto v. Hialeah Auto., 141 So. 3d 1145, 1157-58 (Fla. 2014).

62. The arbitration clause is procedurally unconscionable because the costs imposed by the mandatory New York venue—including travel, lodging, administrative fees, and arbitrator compensation—are prohibitively expensive for financially disabled pro se Plaintiffs, as detailed in paragraph 33. In response to the Defendant's counsel stating, on October 13, 2025, that Gemini would seek to compel arbitration and seek attorneys' fees,, Plaintiffs issued a final, formal written demand on October 15, 2025

providing Defendant Gemini an opportunity to cure the prohibitive
financial and logistical barriers by agreeing to either pay all costs
associated with the New York venue or re-venue the arbitration to the
Middle District of Florida and pay the core fees. Gemini failed to accept
either solution by the deadline of October 20, 2025. This failure to act,
while fully aware of Plaintiffs' financial disability, is prima facie evidence of
procedural unconscionability and a willful obstruction of access to an
effective legal remedy.

63. The mandatory application of New York law to the arbitration, in
conjunction with the New York venue, operates to eliminate or severely
curtail Plaintiffs' right to seek punitive damages, thereby stripping
Plaintiffs of their full legal and equitable remedies.

64. Defendant Gemini's failure to accept the Plaintiffs' final, formal written
demand to cure the unconscionable nature of the arbitration clause serves
as final, conclusive evidence that the clause is structurally intended to be a
financially and logistically prohibitive barrier and an unlawful denial of
access to justice.

65. The Defendant's insistence on enforcing an unconscionable arbitration
clause also violates the public interest in preventing financial institutions
from creating systemic barriers to justice. Allowing a multi-billion dollar,

regulated New York Trust Company to unilaterally retain over $200,000 of customer funds—despite having the sole technical means and knowledge (as admitted in its S-1) to recover them, a function its regulated peers provide for a 5% fee —and then simultaneously require the Plaintiffs (Florida residents) to arbitrate in New York, New York, under prohibitively expensive AAA Commercial Rules , would functionally grant Gemini a corporate license to commit conversion and breach fiduciary duty with impunity. The cost-prohibitive nature of the clause, particularly when used to shield a regulated entity from accountability for the willful conversion of a customer's retirement assets and after formally refusing to cure the cost barrier, is a structurally intended denial of an effective remedy that renders the arbitration clause void as against public policy.

66. Therefore, the Arbitration Provision must be deemed unconscionable and unenforceable.

## VII. **RELIEF REQUESTED (PRAYER FOR RELIEF)**

67. WHEREFORE, Plaintiffs KENT SPENCE and CRISTINA SPENCE respectfully demand judgment against Defendant GEMINI TRUST COMPANY, LLC, and request the following relief:

A. Compensatory Damages: The sum of $209,124.00, representing the converted principal.

B. Additional Compensatory Damages: Damages for emotional distress, including the aggravation of a pre-existing medical condition, the resulting loss of retirement security, lost opportunity, and out-of-pocket expenses in an amount to be determined by the trier of fact.

C. Punitive and Exemplary Damages in an amount to be determined by the trier of fact, but not less than Two Million Dollars ($2,000,000.00).

D. Pre-judgment and post-judgment interest at the highest rate permitted by law.

E. Costs of the suit, including filing fees and service costs.

F. A Declaratory Judgment that the specific digital assets transferred from Plaintiffs' account (209,124 USDC) remain the sole property of the Plaintiffs; that Defendant shall be deemed to hold those assets in a Constructive Trust for the sole benefit of the Plaintiffs; and mandating the immediate repatriation of the full 209,124 USDC to the Plaintiffs' active Gemini account upon recovery.

G. A Declaratory Judgment that the arbitration clause is unconscionable, procedurally and substantively, and is therefore void and unenforceable against Plaintiffs' claims.

H. Alternative Relief: Should this Court determine that the claims are

subject to arbitration, Plaintiffs request that the Court retain jurisdiction and order that Defendant Gemini Trust Company, LLC pay all administrative fees, filing fees, and arbitrator compensation necessary to conduct the arbitration, AND that the arbitration venue be severed and transferred to the Middle District of Florida, thereby curing the unconscionable and prohibitive nature of the clause and preserving the Plaintiffs' right to a remedy.

I. Plaintiffs hereby demand a trial by jury on all issues so triable.

J. Any and all further relief as the Court deems just and equitable.

RESPECTFULLY SUBMITTED.

Dated: 10-21-25

X _____

KENT SPENCE, Pro Se Plaintiff (not an attorney)

11727 Lake Lucaya Dr. Riverview, FL 33579

Phone: (813) 595-1313 Email: KENTSPENCE5@GMAIL.COM

X _____

CRISTINA SPENCE, Pro Se Plaintiff (not an attorney)

11727 Lake Lucaya Dr. Riverview, FL 33579

Phone: (813) 595-1588 Email: CRISTINASPENCE28@GMAIL.COM